# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

In re                                                                    Case No. 14-81564-WRS
                                                                         Chapter 13
EDDIE JAMES WASHINGTON,

    Debtor

## MEMORANDUM OPINION

This case is before the Court on Debtor Eddie James Washington's motion to modify his plan post-confirmation. (Doc. 23). Creditor J&J Caldwell objects to the proposed modification. (Doc. 24). The Court held hearings on this matter on March 29 and April 26, 2016. The issue is whether a Chapter 13 debtor can, through his plan, redeem real property in the debtor's possession that has been sold for taxes under Alabama law, after the tax purchaser has been granted a tax deed. For the reasons set forth below, the Court holds that a debtor in this scenario may, in Alabama, redeem his property through a Chapter 13 plan. Accordingly, J&J Caldwell's objection is OVERRULED and the Debtor's motion to modify is GRANTED.

## I. FACTS & PROCEDURAL HISTORY

Eddie James Washington ("Washington") owned real property known as 1706 Lee Road ("the Property"), but failed to pay state ad valorem taxes on it. The State of Alabama placed a tax lien on the property and sold it at a tax sale on May 4, 2011 to J&J Caldwell for $4,000. (Doc. 24). J&J Caldwell was issued a tax deed to the Property on July 3, 2014 and properly recorded it. (Doc. 24, Ex. A).

Washington filed Chapter 13 bankruptcy on November 23, 2014. (Doc. 1). On his Schedule A he listed the Property as having a value of $87,240, subject to a mortgage on which

he owed roughly $53,500, as well as $1,000 on the tax lien. (Doc. 1). He lists J&J Caldwell as a secured creditor on his Schedule D. (Doc. 1). In his amended Chapter 13 plan, he proposed to pay J&J Caldwell $1,000 at 12% interest via monthly plan payments of $125, and to make direct mortgage payments of $445 per month. (Doc. 14). The Court confirmed Washington's amended plan on February 20, 2015. (Doc. 19).

The Trustee did not distribute Washington's plan payments to J&J Caldwell because it never filed a proof of claim in Washington's bankruptcy. On February 22, 2016, Washington filed a secured proof of claim on behalf of J&J Caldwell in the amount of $6,572. (Claim 5). The same day, he moved to modify his plan to pay J&J Caldwell $6,572 at 12% interest, via a monthly payment of $280. (Doc. 23). The proposed modification also provides that J&J Caldwell will be required to release its tax deed on the Property upon Washington's completion of the plan payments. (Doc. 23). J&J Caldwell objected to the modification, asserting that Washington has no legal interest in the Property. (Doc. 24).

The Court held an evidentiary hearing on April 26, 2016 and heard testimony from Washington and from Robert Garris ("Garris"), the redemption official for the Lee County Probate Office. Washington testified that he has lived in the Property for fifteen years, that he is still living there, and that it is his principal residence. Garris testified that once land is sold at a tax sale, the tax assessments on the land are sent to the purchaser. He also testified that according to the probate office's records, Washington would have to pay $6,566.02 to redeem the Property.[1] This amount would have to be paid in lump sum.[2]

---

[1] Counsel for J&J Caldwell mentioned during her opening statement that Washington would need to pay $13,999 to redeem the property. However, J&J Caldwell did not offer any evidence to substantiate that amount and has not moved to amend the claim Washington filed on

-2-

Case 14-81564    Doc 32    Filed 06/20/16    Entered 06/20/16 09:32:38    Desc Main
                   Document      Page 2 of 16

## II. LAW

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the District Court's General Order of Reference dated April 25, 1985. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). This is a final order.

### A. Post-Confirmation Plan Modification

Any time after a Chapter 13 plan is confirmed, but before plan payments are completed, the debtor, trustee, or any unsecured creditor may seek to modify the plan. 11 U.S.C. § 1329(a); In re Meza, 467 F.3d 874, 878 (5th Cir. 2006). Any post-confirmation plan modification must meet three basic requirements. First, the modification must either (1) increase or reduce payments on a particular class of claims, (2) extend or reduce the time for such payments, (3) adjust distribution on a claim based on payments made outside the plan on the claim, or (4) reduce payments based on the cost of the debtor's health insurance. 11 U.S.C. § 1329(a). Second, the modification must comply with the requirements for plan confirmation set out in 11 U.S.C. §§ 1322(a) and 1325(a), and may treat claims in accordance with the provisions of 11 U.S.C. §§ 1322(b) and 1323(c). 11 U.S.C. § 1329(b)(1). Third, the modification cannot extend the payment period beyond five years after the first plan payment was due, and cannot extend the original commitment period of the debtor's disposable income except for cause. 11 U.S.C. § 1329(c). This Court has held that § 1329 does not require the movant to demonstrate an unforeseen substantial change in the debtor's circumstances. In re Thomas, 291 B.R. 189, 193

---

its behalf.

[2] Garris also testified that a partial redemption (presumably for a partial partition of the land at issue) is permissible in some counties. However, there was no evidence admitted to suggest that the Property would be suitable for partition.

(Bankr. M.D. Ala. 2003). "The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." 11 U.S.C. § 1329(b)(2).

There is no dispute that Washington's proposed modification meets the requirements of §§ 1329(a) and (c). Washington proposes to increase payments on a particular class of claims (J&J Caldwell's secured claim), and is not extending his payment period beyond five years. Whether Washington's modification meets the requirements of § 1329(b)(1) ultimately depends on whether he can redeem the Property through his plan.

## B. Property of the Estate

A Chapter 13 debtor's treatment of a secured claim in his plan depends on the nature of the bankruptcy estate's interest in the property securing the claim. *See* In re Jones, 544 B.R. 692, 696 (Bankr. M.D. Ala. 2016). "Property of a bankruptcy estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" Id. (quoting 11 U.S.C. § 541(a)(1)). "Whether a debtor's interest constitutes 'property of the estate' is a federal question[;] . . . however, 'the nature and existence of the debtor's right to property is determined by looking to state law.'" Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1283 (11th Cir. 1998) (quoting Southtrust Bank of Ala. v. Thomas (In re Thomas), 883 F.2d 991, 995 (11th Cir. 1989)) (internal brackets omitted).

The extent of Washington's interest in the Property is defined by Alabama's tax sale law, and treatment of that interest in bankruptcy is an issue of first impression.[3] Therefore, a detailed discussion of Alabama's tax sale procedure is warranted.

### C.  Alabama Tax Sale Law

### 1.  Certificate of Purchase and Right to Possession

"The probate court of each county may order the sale of lands therein for the payment of taxes assessed on the lands . . . when the tax collector . . . was unable to collect the taxes assessed against the land . . . without a sale of the land." ALA. CODE § 40-10-1. The land must be sold for at least the amount of the tax lien, and if there is no other bidder the State buys the land at that amount. ALA. CODE § 40-10-18. If someone other than the State purchased the land at the tax sale (hereafter "tax purchaser"), the tax purchaser is entitled to a certificate of purchase containing a description of the land and the taxes that were owed. ALA. CODE § 40-10-19. The

---

[3] Courts have considered the treatment in bankruptcy of redemption rights arising out of federal tax sales under the Internal Revenue Code, as well as tax sales under the procedures of other States, particularly Illinois. *E.g.*, In re Krawczyk, 201 B.R. 589 (Bankr. N.D. Ga. 1996) (federal tax sale); In re Cooke, 127 B.R. 784 (Bankr. W.D.N.C. 1991) (same); In re Francis, 489 B.R. 262 (Bankr. N.D. Ga. 2013) (Georgia tax sale); In re Drummer, 457 B.R. 912 (Bankr. N.D. Ga. 2011) (same); In re LaMont, 487 B.R. 488 (N.D. Ill. 2012) (Illinois tax sale); In re Murray, 276 B.R. 869 (Bankr. N.D. Ill. 2002) (same, but reaching a different result); In re Bates, 270 B.R. 455 (Bankr. N.D. Ill. 2001) (same result as LaMont); In re Froehle, 286 B.R. 94 (8th Cir. B.A.P. 2002) (Iowa tax sale). Although the Court has reviewed these cases and others, discussion of them here will be of limited usefulness. Each of the tax sale procedures and redemption rights in these cases are quite different from Alabama's (as well as from each other), and discussion of the analyses in these cases is impossible without detailed discussion of the tax sale procedures undergirding them. Moreover, when the factual scenarios of these cases are sufficiently similar to warrant comparison, there is no clear consensus of the proper treatment of redemption rights in bankruptcy. *E.g.*, *compare* Froehle, 286 B.R. at 102-03 (length of redemption period cannot be modified by a Chapter 13 plan except pursuant to 11 U.S.C. § 108(b)), *with* Francis, 489 B.R. at 269 (length of redemption period can be modified by a Chapter 13 plan regardless of § 108(b)). Because of the nature of the redemption rights arising from an Alabama tax sale, discussed *infra*, the Court need not weigh in on that issue here.

tax purchaser is entitled to possession of the property upon receiving the certificate of purchase, and if the tax debtor has not surrendered possession within six months after the tax purchaser demands it, the tax purchaser may sue the tax debtor for ejectment.[4] ALA. CODE § 40-10-74.

### 2. Administrative Redemption

If the State purchased the land at the tax sale, the land owner may redeem the land "at any time before title passes out of the state. . . ."[5] ALA. CODE § 40-10-120. If a tax purchaser bought the land at the tax sale, it "may be redeemed at any time within three years from the date of the sale. . . ." ALA. CODE § 40-10-120. This is known as "administrative redemption." First Properties, L.L.C. v. Bennett, 959 So. 2d 653, 654 (Ala. Civ. App. 2006). The tax debtor may administratively redeem the property by paying the purchase price plus 12% interest per annum from the date of the sale, plus any insurance premiums paid and the value of all preservation improvements made by the tax purchaser (also with 12% interest from the date of such premium payments or improvements), to the probate court. ALA. CODE § 40-10-122(a) and (c).

---

[4] An ejectment action normally requires a showing by the plaintiff that he has either legal title to, or possession of, the property, and that the defendant has either unlawfully entered upon or detained the property. ALA. CODE § 6-6-280; see also Ex parte McKinney, 87 So. 3d 502, 508 (Ala. 2011). Section 40-10-74 of the Alabama Code provides the tax purchaser a statutory exception to the requirement of legal title when pursuing an ejectment action. Abates v. Timbes, 108 So. 534, 535 (Ala. 1926).

[5] If land sold to the State has not been redeemed after three years, the State is authorized to sell it to any purchaser for all taxes due plus 12% interest, or to the municipality or county in which the land is located "at the best price offered, irrespective of the amount of taxes and interest due." ALA. CODE § 40-10-132(a)(1)-(3). If the land has not been redeemed after five years, the State may sell the land "to any purchaser for cash at the best price obtainable, irrespective of the amount of taxes due[.]" ALA. CODE § 40-10-134.

### 3. Tax Deed

If land purchased at a tax sale by a tax purchaser has not been redeemed after three years, the tax purchaser may demand a tax deed from the probate court, "and such deed shall convey to and vest in the grantee all the right, title, interest and estate of the person whose duty it was to pay the taxes on such real estate and the lien and claim of the state and county thereto[.]" ALA. CODE § 40-10-29. Likewise, if the State had brought the land at the tax sale and later sells it pursuant to ALA. CODE §§ 40-10-132 or 40-10-134, *supra* note 5, the purchaser is entitled to a tax deed granting him "all the right, title, and interest of the state in and to such lands" and providing him "all the rights, liens, powers, and remedies, whether as a plaintiff or defendant, respecting said lands as an individual purchaser at the tax collector's sale would have in similar circumstances[.]" ALA. CODE § 40-10-135.

Delivery of a tax deed to the purchaser, whether under §§ 40-10-29 or 40-10-135, extinguishes the tax debtor's legal title in the land. Thomas v. Benefield, 494 So. 2d 452, 453 (Ala. Civ. App. 1986). In Thomas, the State sold the plaintiff/tax debtor's property in 1981 for nonpayment of taxes and was the highest bidder; the State sold the property to the defendants in 1985 and granted the defendants a tax deed. Id. at 452-53. When the plaintiff subsequently brought an ejectment action against the defendants, the appellate court reversed the trial court's grant of summary judgment for the plaintiff. Id. at 453. The appellate court explained that a party seeking ejectment must have legal title to the property, and that the plaintiff's legal title had been extinguished by the delivery of the tax deed to the defendants. Id.

Case 14-81564    Doc 32    Filed 06/20/16    Entered 06/20/16 09:32:38    Desc Main
Document      Page 7 of 16

### 4. Judicial Redemption

The tax debtor loses his right of administrative redemption once the tax deed is delivered to the tax purchaser (or purchaser from the State), but he retains a right of "'judicial redemption' . . . which involves the filing of an original civil action against a tax-sale purchaser (or the filing of a counterclaim in an ejectment action brought by that purchaser) and the payment of specified sums into the court in which that action or counterclaim is pending." First Properties, L.L.C., 959 So. 2d at 654. When the tax debtor has paid the required redemption amount, "the court shall enter judgment for the [tax debtor] for the land, and all title and interest in the land shall by such judgment be divested out of the owner of the tax deed." ALA. CODE § 40-10-83.

"No action for the recovery of real estate sold for the payment of taxes shall lie unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor[.]" ALA. CODE § 40-10-82. However, "this statute does not begin to run until the purchaser is in adverse possession of the land and has become entitled to demand a deed to the land."[6] Gulf Land Co. v. Buzzelli, 501 So. 2d 1211, 1213 (Ala. 1987). If the purchaser has a tax deed and is in adverse possession of the property, § 40-10-82 acts as a "short" three-year statute of limitations within which the tax debtor must file his judicial redemption action under § 40-10-83.[7] Id.; *see also* Capehart v. Guffey, 30 So. 390, 391 (Ala. 1901). After the three-year period

---

[6] Adverse possession requires "(1) such possession as the land reasonably admits of, (2) openness and notoriety and exclusiveness of possession, (3) hostility toward everybody else in respect of possession, (4) holding possession under claim of right or color of title, and (5) continuity for the statutory period. . . ." Drennan Land & Timber Co. v. Angell, 475 So. 2d 1166, 1171 (Ala. 1985) (internal quotation marks omitted).

[7] For comparative context, common law prescription of land under a bare claim of right (*i.e.*, no color of title) requires adverse possession for 20 years. Hayden v. Robinson, 472 So. 2d 606, 608 (Ala. 1985). If the claimant holds color of title that has been recorded for 10 years, pays

has run, the purchaser may quiet title to the property.[8] Reese v. Robinson, 523 So. 2d 398, 400 (Ala. 1988); *see also* ALA. CODE § 6-6-560.

Because the limitations period of § 40-10-82 does not begin to run against the tax debtor unless the purchaser adversely possesses the land, the right of judicial redemption under § 40-10-83 is preserved "without a time limit, if the owner of the land seeking to redeem has retained possession." Gulf Land Co., 501 So. 2d at 1213. "This possession may be constructive or scrambling,[9] and, where there is no real occupancy of the land, constructive possession follows the title of the original owner and can only be cut off by the adverse possession of the tax purchaser." Id. (footnote added).

Moreover, the Alabama Supreme Court has ruled that § 40-10-82 can also cut the other

---

taxes on the land for 10 years, or derives title by descent cast or devise from a possessor, he must adversely possess the land for 10 years to obtain superior title under statutory adverse possession. Id.; *see also* ALA. CODE § 6-5-200.

[8] If there are no suits pending to test his title to, interest in, or right to possession of land, a claimant may "quiet title" to the land by suing all persons claiming an adverse interest in the land "to clear up all doubts or disputes" concerning the land. Gulf Land Co., 501 So. 2d at 1212-13. To obtain "quiet title" relief, the claimant must prove either (1) that he has "actual, peaceable possession of the lands," or (2) that no other person has actual possession of the land and either (2a) that he has held color of title to and paid taxes on the land for 10 or more consecutive years, or (2b) that he has paid taxes on the land for 10 consecutive years and no other person has paid taxes on the land during that time. Id. at 1213; ALA. CODE § 6-6-560.

[9] "One is in peaceable possession as opposed to scrambling possession when at the time of the suit no other party is denying the *fact* of the complainant's possession. When one party does something (other than mere isolated acts not amounting to an interference with the complainant's peaceable possession) which indicates that he himself claims to be in possession, the complainant's possession ceases to be peaceable and becomes 'disputed' or 'scrambling.'" Ex parte Green, 58 So. 3d 135, 147 (Ala. 2010) (emphasis in original; internal brackets, quotation marks, and citations omitted). Scrambling possession requires that "[t]he party denying the right of possession in the complainant . . . do something indicating that he claims to be in possession himself. . . ." George E. Wood Lumber Co. v. Williams, 47 So. 202, 203 (Ala. 1908).

Case 14-81564    Doc 32    Filed 06/20/16    Entered 06/20/16 09:32:38    Desc Main
Document      Page 9 of 16

way if, after delivery of the tax deed to the purchaser, the tax debtor retains adverse possession of the property. Reese, 523 So. 2d at 400. In Grayson v. Muckleroy, 124 So. 217 (Ala. 1929), Grayson purchased property at tax sales in 1915 and 1916 and received a tax deed to the property two years later,[10] but did not bring an ejectment action until 1927; meanwhile, Muckleroy and his mother (from whom Muckleroy claimed his right) had adversely possessed the property since 1887. Grayson, 124 So. at 217-18. On appeal from a judgment in Muckleroy's favor based on prescription, the Alabama Supreme Court held that Muckleroy's prescription defense was defeated by an adverse 1909 quiet title judgment, but nevertheless affirmed the judgment in Muckleroy's favor because Grayson's ejectment action was time-barred by the prior version of § 40-10-82. Id. at 222.

The statute of limitations in § 40-10-82 can serve not only to bar a tax purchaser's ejectment action, but also to re-vest legal title in the land owner. Reese, 523 So. 2d at 400. In Johnson v. Stephens, 199 So. 828 (Ala. 1941), a father lost legal title to property through a 1931 tax sale and 1933 tax deed delivery but retained exclusive and adverse possession until his death in 1938, at which point the tax purchaser obtained possession of the property. Johnson, 199 So. at 829. The court held that the suit of the father's heirs against the tax purchaser, to partition and sell the property for the heirs' benefit, was not barred because the prior version of § 40-10-82 vested the father with an absolute defense against the tax purchaser, which then vested in the father's heirs at his death. Id.

---

[10] The administrative redemption period used to be two years.

-10-

Case 14-81564    Doc 32    Filed 06/20/16    Entered 06/20/16 09:32:38    Desc Main
Document    Page 10 of 16

## 5. Summary

When land is sold under Alabama law due to non-payment of taxes, the tax debtor has three years (or more) to redeem his interest in the land without losing legal title to the property – known as administrative redemption. If the tax debtor fails to redeem his interest in the land within three years after the foreclosure, the tax purchaser may demand a tax deed (or the State may sell one) that extinguishes the tax debtor's legal interest in the land.

The tax purchaser is entitled to possession of the land when he purchases it at the tax sale (or from the State). If the tax purchaser obtains a tax deed and maintains adverse possession of the land, the tax debtor has three years to redeem the land by filing suit – known as judicial redemption. If the tax debtor has at least constructive or scrambling possession of the land (*i.e.*, the tax purchaser does not adversely possess the land), then notwithstanding the tax deed the tax debtor has a right to redeem the land for as long as he retains possession. Finally, if the tax purchaser obtains a tax deed but the tax debtor remains in adverse possession of the land, title to the land will revert back to the tax debtor unless the tax purchaser files an ejectment action within three years.

## III. ANALYSIS

J&J Caldwell obtained a tax deed – and legal title – to the Property before Washington filed bankruptcy. Therefore, Washington had no administrative redemption right that could enter his bankruptcy estate. Washington's judicial redemption right, however, did enter his bankruptcy estate. Wragg v. Fed. Land Bank of New Orleans, 317 U.S. 325, 328-29 (1943). Because he has lost legal title to the Property, Washington's ability to exercise his judicial redemption right in

-11-

Chapter 13 is limited by the time constraints of state law and, if applicable, 11 U.S.C. § 108(b). *Cf.* Commercial Fed. Mortg. Corp. v. Smith (In re Smith), 85 F.3d 1555, 1560 (11th Cir. 1996) (holding that the debtor could not extend the one-year statutory redemption period of ALA. CODE § 6-5-248(b) through a bankruptcy that was filed after a mortgage foreclosure); Jones, 544 B.R. at 701 (holding that a debtor's power to extend the Alabama Pawnshop Act's 30-day statutory right of redemption in bankruptcy was limited to the 60 days provided by 11 U.S.C. § 108(b)). Yet Washington retains possession of the Property, and J&J Caldwell has offered no evidence either that it has ever filed an ejectment action against him or that Washington possesses the Property unlawfully. The Alabama Supreme Court has made clear that a tax debtor retains a judicial right of redemption indefinitely so long as he maintains at least constructive or scrambling possession of the property. *See, e.g.*, Gulf Land Co., 501 So. 2d at 1213. Smith and Jones are distinguishable from this case because, based on these facts, there is no constraint under Alabama law on the time that Washington has to exercise his judicial right of redemption.

Throughout the April 26 evidentiary hearing, Washington's counsel referred to his intention to "cure the default" of the tax debt. *See* 11 U.S.C. §§ 1322(b)(3) and (b)(5). That reflects a misunderstanding of the parties' positions and the law. "A 'cure,' as allowed under section 1322(b), leaves most of the terms of the underlying loan agreement in effect, and merely allows the debtor to reverse any acceleration of the loan, caused by the default, so that the debtor can 'catch up' on the defaulted amounts while maintaining current payments." McCarn v. Wyhy Fed. Credit Union (In re McCarn), 218 B.R. 154, 162 (10th Cir. B.A.P. 1998) (internal quotation marks omitted). "The right to redeem property, on the other hand, does not allow the debtor to reverse acceleration on the loan and catch up payments, but rather requires the debtor to pay the

-12-

purchaser of the property the sum that it paid at a foreclosure sale plus interests and costs within a stated period of time." Id. There is no loan agreement between Washington and J&J Caldwell that can be "cured," and even if there were the cure would have to be effected prior to a foreclosure sale. Id.; Flowers v. Wash. Fed. Savings Bank (In re Flowers), 94 B.R. 3, 7 (Bankr. D.D.C. 1988); *see also* 11 U.S.C. § 1322(c)(1).[11] What Washington actually intends to do is redeem his property from J&J Caldwell.

Section 1322(b) does not specifically authorize a debtor to exercise a right of redemption in a Chapter 13 plan; however, a plan may "include any other appropriate provision not inconsistent with [the Bankruptcy Code]." 11 U.S.C. § 1322(b)(11). "This grant gives debtors considerable discretion to tailor the terms of a plan to their individual circumstances." In re Herrera, 422 B.R. 698, 710 (9th Cir. B.A.P. 2010), *aff'd and adopted by* In re Monroy, 650 F.3d 1300, 1301 (9th Cir. 2010). Bankruptcy courts have relied on § 1322(b)(11) to confirm plans that provide for enhanced creditor account reporting requirements, authorize the debtor to exercise a trustee's avoidance powers, establish reserve funds to pay utilities in the event of default, and pay taxes in a particular order. Herrera, 422 B.R. at 710-11 (citing examples). The Herrera panel also suggested that § 1322(b)(11) might permit variation in plan payments based on seasonal income, a temporary hiatus of certain types of plan payments, a delay in the vesting of property,

---

[11] "Notwithstanding [§ 1322] (b)(2) and applicable nonbankruptcy law . . . a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under [§§ 1322(b)(3) or (b)(5)] until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]" 11 U.S.C. § 1322(c)(1).

-13-

or a provision providing for injunctive or equitable relief. Id. at 710 n.13 (citing 8 Collier on Bankruptcy ¶ 1322.14[4] at 1322-56 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev., 2007) (footnotes omitted)).

The Court holds that § 1322(b)(11) contemplates a debtor's exercise of a right of redemption through a Chapter 13 plan, so long as it is exercised in accordance with state law.[12] Section 1322(c)(1) presents no obstacle to Washington's use of a Chapter 13 plan in this manner, even assuming that a tax sale is analogous to a foreclosure sale, because it only cuts off the right to cure a default after the sale; it does not abrogate a debtor's right of redemption. McCarn, 218 B.R. at 162. Nor is the anti-modification provision of § 1322(b)(2) applicable because a tax lien (or in this case a tax deed) is not a security interest.[13] See 11 U.S.C. § 101(51) (defining "security interest" as "lien created by an agreement"). The proposed plan modification complies with the other requirements of confirmation imposed by §§ 1322(a) and 1325(a).

Garris testified, and J&J Caldwell has emphasized, that Alabama law requires a tax debtor to make a lump sum payment to exercise his right of redemption. The Court sees no insurmountable obstacle in this requirement either because the Trustee can simply hold the payments Washington makes toward the redemption until he has paid enough to make the lump

---

[12] The only other case the Court is aware of that relied on § 1322(b)(11) as a basis to permit a debtor to exercise a right of redemption in a Chapter 13 plan, In re Stevens, 374 B.R. 31 (Bankr. D.N.H. 2007), held that state law time limitations on the redemption right were preempted by the provisions of Chapter 13. Stevens, 374 B.R. at 34-35. The Court disagrees with this holding in Stevens, and stresses that there are no time limitations applicable in this case because Alabama law does not provide any for a tax debtor's judicial redemption of property he is living in.

[13] A Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a *security interest* in real property that is the debtor's principal residence. . . ." 11 U.S.C. § 1322(b)(2) (emphasis added).

-14-

sum payment to the probate court. Finally, based on the evidence submitted, the proposed modification provides for full payment of the redemption amount. Garris testified that Washington proposes to pay the amount J&J Caldwell paid at the tax sale plus the required 12% interest. Garris also testified, and the Court agrees, that J&J Caldwell has the burden of proving the value of any improvements upon the Property or any insurance it carried on the Property. Though J&J Caldwell's counsel indicated that the redemption amount is more than double the amount Washington proposes to pay, J&J Caldwell failed to meet its burden of proof on this point because it never offered any evidence in support of its figure. *Supra* note 1.

Washington's proposed plan modification complies with state law redemption requirements and plan confirmation requirements, and is authorized by § 1322(b)(11). Therefore, it complies with § 1329(b)(1).

## IV. CONCLUSION

Under Alabama law, Eddie James Washington has a right to "judicially" redeem the property he lives in from tax-sale purchaser J&J Caldwell for an indefinite period of time. The Bankruptcy Code permits a debtor to exercise a right of redemption through a Chapter 13 plan as long as the debtor complies with state law in doing so. Washington's proposed plan modification complies with both state law requirements for exercising a judicial right of redemption and the Bankruptcy Code's requirements for plan modification. Therefore, J&J

-15-

Caldwell's objection to the modification is OVERRULED and Washington's motion to modify his plan is GRANTED. The Court will issue a separate order consistent with this opinion.

Done this 17th day of June, 2016.

/s/ William R. Sawyer

United States Bankruptcy Judge

c: Charles M. Ingrum Jr., Attorney for Debtor
   Bonita J. Caldwell, Attorney for J&J Caldwell, et al